147. STONE TOBACCO COMPANY *v.* ALLEN & HOLMES.

A sold tobacco which was shipped to B, the vendee. Upon receipt of the tobacco, B notified A that it was held subject to his order, for reasons stated. B, not hearing for several weeks from A in answer to his proposition to rescind, sold the tobacco to C, who sold to D, and D sold to E. These purchases were all bona fide and for value. A brought suit against E to recover the tobacco. *Held*, that the sale to B was not rescinded, and A could not recover the tobacco or its value from E.

Trover, from city court of Moultrie—Judge Humphreys. March 5, 1906.

Submitted February 26,—Decided March 11, 1907.

*T. H. Parker,* for plaintiff.    *W. F. Way,* for defendants.

HILL, C. J.   The R. T. Stone Tobacco Company brought suit in the city court of Moultrie against Allen & Holmes for the recovery of personalty (certain boxes of tobacco).   On the trial of the case, a verdict was returned in favor of the plaintiff.   This verdict, on motion for a new trial, made by the defendants, was set aside by the trial judge and a new trial granted.   On December 12, 1905, at the November adjourned term of the city court of Moultrie, the second trial took place, and the jury again returned a verdict in favor of the plaintiff.   The defendants filed a motion for a new trial, and the trial judge again set aside the verdict and granted the new trial asked for.   To the judgment granting a new trial exceptions were made by the plaintiff.

The evidence submitted to the jury was substantially as follows: Between June 1, 1903, and October 17, 1903, the plaintiff shipped to John Hooker, at Moultrie, Ga., a number of boxes of tobacco.   On August 27, 1903, Hooker wrote the following letter to the plaintiff: "R. T. Stone Tobacco Company,   Gentlemen:—That bill of tobacco you shipped me here is subject to your order.   I am out of business, and your salesman did not come up to contract. [Signed] John A. Hooker."   This letter was received by the plaintiff about August 29, 1903; and on September 4, 1903, the plaintiff wrote to its sales agent, sending him this letter, and directed him to take charge of the tobacco.   This was all the testimony of the plaintiff, except as to the value of the tobacco, and the fact that the plaintiff had never sold the Moultrie Live Stock Company any tobacco. John A. Hooker, the purchaser of the tobacco in question from the plaintiff, testified that he wrote the letter above mentioned, and at that time had the tobacco in the depot in Moultrie.   In reply to that letter, the plaintiff wrote Hooker that it would not accept the tobacco, and thereafter sent him several statements for the same. The letters referred to were lost, and their contents, after proper foundation had been laid, were admitted.   About ten days after writing the letter tendering back the tobacco to the plaintiff, Hooker, the purchaser, sold it to one John A. Williams, and Will-

iams presumably sold it to the Moultrie Live Stock Company, from whom the defendants bought it. It was further shown that the agent of the plaintiff, one McLeod, to whom the plaintiff's witnesses testified they had sent Hooker's letter offering back the tobacco, did not appear at Moultrie and ask for the tobacco until October 17, 1903, when for the first time, according to Hooker, he heard that the plaintiff would take back the tobacco. The evidence further was that neither Williams, who bought the tobacco from Hooker, nor the defendants, who bought the tobacco from the Moultrie Live Stock Company, had any notice of plaintiff's claim to the tobacco. There is no evidence in the case as to whether the Moultrie Live Stock Company had any notice of the plaintiff's claim to the tobacco when it purchased it, or not; but we do not think this material.

The motion for a new trial was based on the formal grounds, and on the ground that the verdict was contrary to the following instructions of the court: (1) "I charge you, upon the subject of rescission of contracts, that the plaintiffs in this case were, under the law, in duty bound to accept the proffered rescission, if one was made within a reasonable time; and if they had failed to do so, then any one purchasing the tobacco in question was an innocent purchaser, and the plaintiffs can not recover. I am not telling or suggesting to you what has or what has not been proven. The law will not allow me to do so, but you must look to the evidence as you have heard it, and determine for yourselves what has been proven." (2) "I further charge you that the burden of proof is upon the plaintiffs to show that the defendants had notice of their claim to the goods in question; and if they have failed to show this, then your verdict should be in favor of the defendants. If you determine from the evidence that the defendants had notice that the tobacco belonged to the plaintiffs, then I charge you that they would not be innocent purchasers, but if they had no notice, then they are innocent purchasers, and the plaintiffs can not recover. You may look to all the evidence and determine whether the defendants had notice or not." We think the principles of law embodied in the foregoing instructions were correct, and accurately stated the issues made by the evidence. And we also think that the jury, under the evidence, found against these instructions. The evidence fails to show that the sale of the tobacco in question

was rescinded. The offer to return the tobacco to the seller, made by the purchaser, was not accepted and notice of such acceptance given to the purchaser within a reasonable time. Indeed there was positive evidence before the jury, in the testimony of the purchaser, that the seller had repeatedly refused to accept the tobacco and allow a rescission of the sale. Whether this fact be true or not, it could not affect the rights of innocent purchasers, in view of the fact that there was no rescission consummated. The evidence is uncontroverted that the defendants in the court below, when they bought the tobacco in question, had no notice of any claim that the plaintiff might have had to it. On the contrary, it is indisputably shown that they bought the tobacco, not from the original purchaser, Hooker, but from the Moultrie Live Stock Company, who presumably had bought it from one Williams, who had purchased it from the original purchaser, Hooker, and without any knowledge of the claim of the plaintiff.

We can not imagine how the jury, under the facts and the law applicable thereto as contained in the court's charge, could have found in favor of the plaintiff. Even under the plaintiff's own evidence, the sale of the tobacco was not rescinded, as the plaintiff had not notified the purchaser of the acceptance of his offer to rescind, and the seller who was in possession of the personal property in question sold it to an innocent purchaser for value, before he had received any intimation that the seller of the tobacco had instructed its agent to accept his offer and take possession of the property. The evidence clearly established that the defendants were innocent purchasers for value of the tobacco; and the strong equity which existed in their favor entitled them to all the protection which the court could properly extend to them. A direction of a verdict in their favor would have been fully warranted; and certainly the court did right in setting aside the verdict against them and in granting a new trial.　　　*Judgment affirmed.*